# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F. RUSSELL HARRIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY MILLER RECLAMATION DISTRICT NO. 2131, et al.,<br><br>Defendants. | CASE NO. 1:21-cv-00882-AWI-EPG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>(Doc. No. 15) |

Plaintiffs F. Russell Harris ("Harris") and Harris Farms, LP ("Harris Farms") contend that the San Luis Canal Company ("SLCC"), Henry Miller Reclamation District No. 2131 ("HMRD") and persons controlling those entities (together with SLCC and HMRD, "Defendants") violated the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment by blocking a water reuse plan. They also seek judicial declarations and writs of mandate clearing the way for implementation of the plan. Defendants move to dismiss the Complaint and to strike a prayer for punitive damages as to HMRD. For the reasons set forth below, the motion to dismiss will be granted and the motion to strike will be denied as moot.

## BACKGROUND

Defendant SLCC is a private mutual water company established in 1913 that owns water rights on behalf of its shareholders and that is charged with ensuring delivery of water to its shareholders in Merced County and Fresno County. Doc. No. 1 at 3:23-25.[1] SLCC is governed by

---

[1] Unless otherwise indicated, page citations to documents on the electronic docket for this case are to the page numbers in the CM/ECF block at the top of each page.

seven directors elected to one-year terms. Id. ¶ 5.

Defendant HMRD is a water reclamation district. Doc. No. 1 ¶ 6. As alleged, HMRD is "a public and governmental agency" overseen by a seven trustees elected to four-year terms. Id. SLCC formed HMRD in 1999 "to deliver the water supplied by [] SLCC to the farmland within SLCC's district, as well as perform canal maintenance and operate drainage facilities." Id. ¶ 17. HMRD took "ownership and control of a unique district boundary that included [] the canals, ditches and drains owned by the SLCC," but "the ownership of water rights and responsibility to provide water to customers remained with SLCC." Id. ¶¶ 17-18.

HMRD and SLCC "have merged so thoroughly over the past two decades that they are nearly indistinguishable." Id. at 4:1-2. For example, they operate from the same office, share the same website, and have identical controlling boards and the same employees. Id. at 4:2-6. SLCC and HMRD "operate as a single, unified unit, when it benefits them, or as distinct entities to take advantage of the public and private protections respectively afforded to them." Id. ¶ 19.

Defendant John Wiersma is general manager of SLCC and HMRD. Doc. No. 1 ¶ 14. Each of the other individual Defendants (namely, James Nickel, Cannon Michael, David Pruitt, Robert McDonald, Douglas Goodman, David Carlucci and Michael Palazzo) is both an SLCC trustee and an HMRD director.[2] Id. ¶¶ 7-13.

Harris is a lifelong Central Valley farmer, with a "large, vertically integrated farming operation specializing in almonds," who "owns, leases, or otherwise operates real property served by [] SLCC and HMRD." Doc. No. 1 at 4:7-10. Harris is also the general manager of Harris Farms, which is a California limited partnership that owns real property served by SLCC and HMRD.[3] Id. ¶¶ 3-4. Harris has managed and farmed almonds on property served by SLCC and HMRD for the past four years. Id. ¶ 21. In February 2021, Harris became a shareholder in SLCC through the purchase of property. Id.

Harris presented to the SLCC and HMRD boards a plan to reuse water on his land using his own water collection and distribution system (the "Project"). Doc. No. 1 ¶ 22. To implement

---

[2] Wiersma, Nickel, Michael, Pruitt, McDonald, Goodman, Carlucci and Palazzo are referred to collectively herein as the "Individual Defendants."
[3] Harris and Harris Farms are referred to collectively herein as "Plaintiffs."

2

the Project, reused water would have to cross under a drain at the intersection of Mint Road and Fairfax Road ("Mint/Fairfax") and under a drain east of Fairfax Road ("San Juan Drain #3"), in addition to crossing the Temple-Santa Rita Canal in two locations. Id. ¶ 22. As alleged in the Complaint, "HMRD operates and maintains Mint/Fairfax and San Juan Drain #3 through recorded, non-exclusive easements for its benefit" and "is the fee title owner of the Temple-Santa Rita Canal." Id.

There was no "formal application process for the Project," but Defendants declined to provide licenses for the ditch and canal crossings required for the Project and "exploited their dual positions with HMRD and SLCC to institute a series of procedural and financial obstacles" to the Project as a result of "personal animus" toward Harris. Doc. No. 1 ¶¶ 27-28, 41, 52, 129.c., 139.c.-d.

Based on the foregoing allegations, Harris brings claims under 42 U.S.C. § 1983 against all Defendants for violations of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, as well as state law claims for declaratory relief and writs of mandate involving property rights, the scope of HMRD's and SLCC's authority and other issues bearing on implementation of the Project.

**LEGAL FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6)[4] may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121–22 (9th Cir. 2008).

In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

---

[4] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" is less than probability but "more than a sheer possibility," and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made ...." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities to do so. Garmon v. County of Los Angeles, 828 F.3d 837, 842 (9th Cir. 2016).

## **DISCUSSION**

The Court will first address Plaintiffs' due process and equal protection claims under § 1983 and then turn to Plaintiffs' state law claims.

### A. **Due Process (First, Second, Fourth & Fifth Causes of Action)**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This provision guarantees two types of due process: procedural and substantive. See Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992); see also Albright v. Oliver, 510 U.S. 266, 272 (1994) ("[T]he Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights."). Procedural due process provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or property" by the government.

4

1 Collins, 503 U.S. at 125. Substantive due process "forbids the government from depriving a
2 person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with
3 rights implicit in the concept of ordered liberty.' " Nunez v. City of Los Angeles, 147 F.3d 867,
4 871 (9th Cir. 1998) (quoted sources omitted). Thus, to state a claim under the Due Process Clause
5 of the Fourteenth Amendment, a petitioner must, at the threshold, identify a "life, liberty or
6 property" interest that is protected by the Constitution. See Wilkinson v. Austin, 545 U.S. 209,
7 221 (2005) (the Due Process Clause "protects persons against deprivations of life, liberty, or
8 property; and those who seek to invoke its procedural protection must establish that one of these
9 interests is at stake"); Wedges/Ledges of California, Inc. v. City of Phoenix, Arizona, 24 F.3d 56,
10 62 (9th Cir. 1994) ("A threshold requirement to a substantive or procedural due process claim is
11 the plaintiff's showing of a liberty or property interest protected by the Constitution.").

12       The Complaint in this case sets forth procedural due process claims and substantive due
13 process claims against all Defendants. Doc. No. 1 ¶¶ 81-125. Plaintiffs contend that the
14 constitutionally protected interest underlying these claims is the "right to devote [one's] land to
15 any legitimate use," Doc. No. 20 at 14:7-9, while Defendants argue that the only interest at stake is
16 whatever interest Plaintiffs may have in authorization (specifically, licenses) to implement the
17 Project. Doc. No. 15 at 8:12-14.

18       The Court agrees with Defendants. Plaintiffs are correct that the Ninth Circuit has
19 recognized a "constitutionally 'protected property interest' in a landowner's right to 'devote [his]
20 land to any legitimate use.' " Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 949 (9th Cir.
21 2004) (quoting Harris v. County of Riverside, 904 F.2d 497, 503 (9th Cir.1990)), overruled on
22 other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005). In *Harris v. County of*
23 *Riverside*, for example, the Ninth Circuit found that a change from commercial zoning to more
24 restrictive residential zoning implicated a constitutionally protected property interest because it
25 "severely alter[ed] the permissible uses of [the plaintiff's] land" by, *inter alia*, barring operation of
26 plaintiff's business (rental of all-terrain vehicles). 904 F.2d at 498-99, 502-03. In *Action*
27 *Apartment Association, Inc. v. Santa Monica Rent Control Board*, similarly, the Ninth Circuit
28 found that amendments to a rent control ordinance implicated a constitutionally protected property

right in that they placed new limits on the ability of landowners to retake (and redeploy) property through eviction. 509 F.3d 1020, 1022, 1026 (9th Cir. 2007). And in *Squaw Valley Development Company v. Goldberg*, the Court found that "overzealous and selective regulation" implicated a constitutionally protected property right in that it interfered with the operation of a ski resort. 375 F.3d at 948.

There is no allegation here, however, that Defendants barred Plaintiffs from engaging in almond farming or otherwise took steps to place new limits on the use of Plaintiffs' land. See Richter v. City of Des Moines, 2012 WL 8671871, at *4 (W.D. Wash. Mar. 1, 2012), aff'd, 532 F. App'x 755 (9th Cir. 2013), as amended (Aug. 19, 2013) (finding that the right to "legitimate use" of one's land was not implicated where plaintiff had "not shown any deprivation of the use of her land vis-à-vis an affirmative government action"). In Plaintiffs' own words, this case was brought because Defendants did not allow Plaintiffs "to complete the Project," Doc. No. 20 at 14:8-9, and as alleged in the Complaint, completion of the Project requires crossing land and infrastructure that Plaintiffs do not own or control. Specifically, the Complaint states:

> In order to carry-out the Project, the reused and distributed water would need to cross under certain drains and canals in four locations. Specifically, the drain at the intersection of Mint Road and Fairfax Road ("Mint/Fairfax"), San Juan Drain #3 just east of Fairfax Road ("San Juan Drain #3"), and the Temple-Santa Rita Canal in two separate locations. HMRD operates and maintains Mint/Fairfax and San Juan Drain #3 through recorded, non-exclusive easements for its benefit. HMRD is the fee title owner of the Temple-Santa Rita Canal.

Doc. No. 1 ¶ 22. The threshold question for purposes of due process analysis, therefore, is not whether Plaintiffs have a constitutionally protected property interest in the "legitimate use" of their land, but whether Plaintiffs have a constitutionally protected interest in licenses (or other forms of authorization) for the Project. Cf. Acad. of Our Lady of Peace v. City of San Diego, 2012 WL 13175857, at *6 (S.D. Cal. May 11, 2012) (finding a school modernization project implicated plaintiff's interest in the permits required for the project, not the plaintiff's interest in making use of its property).

In some instances, there can be a constitutionally protected property interest in government-issued authorizations along the lines of a license or permit. Gerhart v. Lake Cty., Mont., 637 F.3d 1013, 1019 (9th Cir. 2011). To have a constitutionally protected property interest

in a license, however, "a person clearly must have more than an abstract need or desire for [it]" and more than "a unilateral expectation of it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). He must have a "legitimate claim of *entitlement* to it" stemming "from an independent source such as state law." Id. (emphasis original). The Ninth Circuit has held that a statute (or similar authority) creates a constitutionally protected property interest where it compels issuance of a license, permit or other such authorization where specified criteria are objectively satisfied, see Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir.1998) (holding that "specific, mandatory" and "carefully circumscribed" requirements constrained discretion enough to give rise to property interest in a fishing permit); Wedges/Ledges of California, 24 F.3d at 67 (finding that applicants for licenses to operate amusement games had protectible property interests because of significant statutory restrictions on the city's discretion to issue the licenses), but there is no protected property interest where a statute "grants [a] reviewing body unfettered discretion to approve or deny an application" or where the "the reviewing body has discretion … to impose licensing criteria of its own creation." Shanks v. Dressel, 540 F.3d 1082, 1091 (9th Cir. 2008) (quoting Thornton v. City of St. Helens, 425 F.3d 1158, 1164–65 (9th Cir. 2005)) (internal quotation marks omitted).

In *Bateson v. Geisse*, for example, the Ninth Circuit rejected a procedural due process claim brought by a plaintiff who was denied approval of a minor plat application that would have allowed him to split his lot because the city council had "unbridled discretion" over approval of the application. 857 F.2d 1300, 1305 (9th Cir. 1988). In *Mohamed v. County of Sacramento*, similarly, a court in this district found that the plaintiff had no protectable property interest in the building permits in question because the California Building Code gave a building official "discretion whether to revoke a permit" and plaintiffs did not identify "any local or state law entitling them to the[] permits." 2016 WL 6635777, at *5 (E.D. Cal. Nov. 8, 2016).

Here, Plaintiffs affirmatively allege that there was no formal application process for the licenses in question and make no showing as to any limitations on HMRD's discretion with respect to approval of work touching on land or infrastructure under its ownership or control. The Court therefore finds that Plaintiffs have failed to show a constitutionally protected property

interest in licenses for the Project and will dismiss all due process claims as to all Defendants on those grounds. See Thornton, 425 F.3d at 1166.

### B.     Equal Protection (Third & Sixth Causes of Action)

The Equal Protection Clause of the Fourteenth Amendment provides, in effect, that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). The equal protection guarantee protects not only groups, but individuals who would constitute a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000) (finding that plaintiff had adequately alleged a "class of one" equal protection claim where the defendant village "intentionally demanded a 33–foot easement as a condition of connecting her property to the municipal water supply where [it] required only a 15–foot easement from other similarly situated property owners").

To prevail on a "class of one" claim, a plaintiff must show that the defendant: "(1) intentionally (2) treated [the plaintiff] differently than other similarly situated property owners, (3) without a rational basis." Gerhart, 637 F.3d at 1022. "The class-of-one doctrine does not apply to forms of state action that by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments," unless the plaintiff can show a "pattern of generally exercising the discretion in a particular manner while treating one individual differently *and* detrimentally." Contasti v. City of Solana Beach, 644 F. App'x 743, 744 (9th Cir. 2016) (quoting Towery v. Brewer, 672 F.3d 650, 660-61 (9th Cir. 2012)) (emphasis original).

The Complaint alleges (implicitly on a "class of one" theory) that Defendants violated Plaintiffs' equal protection rights by, *inter alia*, acting with personal animus toward Harris; making disparaging comments about Harris's character prior to making decisions regarding the Project; creating new and unreasonable requirements for the Project; and failing to furnish records relevant to the Project. Doc. No. 1 ¶ 129.

The Court agrees with Defendants that Plaintiffs have not stated a "class of one" claim because they rely solely on conclusory allegations that they were "treated … differently from similarly situated persons," see, e.g., Doc. No. 1 ¶¶ 130, 140, without setting forth factual allegations as to the treatment supposedly received by others. Plaintiffs argue that their allegations

mirror those in *Olech*, Doc. No. 20 at 26-27, but as Defendants note, the Supreme Court read the complaint in *Olech* to allege that the defendant village had "demanded a 33-foot easement" from the plaintiff as a condition for connecting to the municipal water supply while "requir[ing] only a 15-foot easement from other similarly situated property owners" for the same access. Olech, 528 U.S. at 565. The Supreme Court's order thus confirms that there were factual allegations as to comparators in *Olech*. In *Contasti v. City of Solana Beach*, similarly, the Ninth Circuit reinstated a "class of one" claim based, in large part, on a declaration stating that the defendant had approved building permits for projects of comparable size on similar lots on the same street shortly before denying plaintiffs' permit applications. Contasti, 644 F. App'x at 745. Plaintiffs set forth multiple allegations as to how they were allegedly mistreated by the Defendants, but they provide no factual basis for the Court to infer that they were treated "differently *and* detrimentally" when compared to other property owners in Defendants' ambit who were engaged in similar undertakings. Id. The equal protection claims will therefore be dismissed as to all Defendants.

### C. Section 1983 Claims Against Individual Defendants in Their Official Capacities with HMRD

The Supreme Court has stated that an official capacity claim is simply "another way of pleading an action against an entity of which an officer is an agent" and that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (cited sources and internal quotation marks omitted). Thus, "when a § 1983 complaint asserts a claim against a municipal entity and municipal official in her official capacity, federal district courts routinely dismiss the official capacity claim as duplicative or redundant." Rose v. Cty. of Sacramento, 163 F. Supp. 3d 787, 793 (E.D. Cal. 2016) (collecting cases).

Plaintiffs do not dispute that official capacity suits are suits against entities but argue that claims against Individual Defendants in their official capacities with HMRD should not be dismissed because "neither the individual HMRD Defendants nor HMRD suffer any prejudice with [Individual Defendants] also being named in their official capacity." Doc. No. 20 at 14:15-16. Even assuming, however, that being gratuitously named as a defendant on a federal cause of

action is not prejudicial to individuals, Plaintiffs cite no authority for the proposition that lack of prejudice precludes—or even weighs against—dismissal of official capacity claims. Plaintiffs' argument as to "demarcating a legally critical difference between each defendant," id. at 16:1-2, is similarly without merit because dismissing the official capacity claims against Individual Defendants would have no impact—let alone a "legally critical" impact—on the adjudication of Plaintiffs' claims or Plaintiffs' potential recovery. HMRD has received notice of and an opportunity to respond to the claims against it. Consistent with common practice, the Court will therefore dismiss the First, Third and Fifth Causes of Action as to the Individual Defendants in their official capacities with HMRD. See Rose, 163 F. Supp. 3d at 793.

### D. Section 1983 Claims Against HMRD Officials in Their Personal Capacities

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Graham, 473 U.S. at 165–66. The doctrine of qualified immunity shields government officials performing discretionary functions from such liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Dunn v. Castro, 621 F.3d 1196, 1198–99 (9th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks omitted)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 571 U.S. 3, 6 (2013) (quoted source and internal quotation marks omitted).

Under the test set forth by the Supreme Court in *Saucier v. Katz*, courts look to two distinct questions in analyzing whether a government official is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 197 (2001); Dunn, 621 F.3d at 1199. As one part of the analysis, the court determines whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right. Dunn, 621 F.3d at 1199 (citing Saucier, 533 U.S. at 201). As the other part of the analysis, the court decides whether the right is clearly established such that a reasonable government official would have known that "his conduct was unlawful in the situation he confronted." Id. (citing Saucier, 533 at 202). A government official violates clearly

established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' " Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has instructed that courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless [a court] can determine, based on the complaint itself, that qualified immunity applies." Schwake v. Arizona Bd. of Regents, 821 F. App'x 768, 770 (9th Cir. 2020) (quoted source and internal quotation marks omitted).

As set forth above, Plaintiffs have failed to allege a constitutional violation or, for that matter, a constitutionally protected interest in the Complaint. The Court therefore finds that the Individual Defendants are entitled to qualified immunity as alleged government officials and will dismiss the First, Third and Fifth Causes of Action as to the Individual Defendants in their personal capacities. See Schwake, 821 F. App'x at 771 (finding that university officials were entitled to qualified immunity where plaintiff "failed to allege a protected property or liberty interest … [or] violations of his procedural due process rights").

E. **State Law Causes of Action**

In addition to the § 1983 claims for violations of the Fourteenth Amendment addressed above, Plaintiffs seek judicial declarations bearing on the Project, including, for example, declarations regarding the nature of certain easements; the scope of Defendants' regulatory authority; and Plaintiffs' rights with respect to implementing the Project. Doc. No. 1 ¶¶ 145-158, 173-186. Plaintiffs also seek writs of mandate under the California Code of Civil Procedure directing HMRD to allow the Project to cross the Temple Santa Rita Canal at two points. Id. ¶¶ 159-172.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Moreover, "these factors usually will favor a decision to relinquish jurisdiction when state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." Id. (quoted source and internal quotation marks omitted).

Here, all § 1983 claims will be dismissed. See Luis v. County of San Diego, 2017 WL 5446085, at *8 (S.D. Cal. Nov. 14, 2017) (declining to exercise supplemental jurisdiction over state law claims where § 1983 claims were dismissed early in the proceedings). Further, the state law claims (which are numerous and fact intensive) involve issues – including, for example, property rights, public agency governance and corporate governance – that state courts have a special interest in adjudicating and that the Court is particularly disinclined to address through declarations or writs of mandate. See Fresno Unified School District v. K.U. ex rel. A.D.U., 980 F. Supp. 2d 1160, 1184-1185 (E.D. Cal. 2013) (federal district courts "routinely decline to exercise supplemental jurisdiction over California writ of mandate claims" because they "are uniquely in the domain and interest of the state courts" and "[a] federal court's exercise of jurisdiction over a state mandamus issue raises serious considerations regarding comity and federalism"); Mercury Insurance Company v. Corporate Protection Professionals Investigations & Security, Inc., 1997 WL 220314, at *2 (N.D. Cal. April 23, 1997) ("dismissal of a suit seeking declaratory relief is appropriate where all the issues raised in the federal suit can be fully litigated in state court, and the suit does not present complex questions of federal law"). The state law claims will therefore be dismissed without leave to amend.

### **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss will be granted. Leave to amend (consistent with this order and Rule 11) will be granted with respect to Plaintiffs' § 1983 claims except that the First, Third and Fifth Causes of Action will be dismissed with prejudice as to the Individual Defendants in their official capacities. Plaintiffs' state law claims will be dismissed without leave to amend but without prejudice to being brought in state court. In light of these

dismissals, it is unnecessary for the Court to address Defendants' arguments that the Court should abstain from deciding disputes involving SLCC, and Defendants' motion under Rule 12(f) to strike the prayer for punitive damages as to HMRD and Individual Defendants acting on behalf of HMRD will denied as moot.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 15) is GRANTED as follows:
    a. The First, Second, Third, Fourth, Fifth and Sixth Causes of Action are DISMISSED as to all Defendants;
        i. The First, Third and Fifth Causes of Action are DISMISSED WITH PREJUDICE to the extent they are brought against Individual Defendants in their official capacities with HMRD;
        ii. Plaintiffs are otherwise GRANTED LEAVE TO AMEND the First, Second, Third, Fourth, Fifth and Sixth Causes of Action, consistent with this order and Rule 11;
2. The Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth Causes of Action are DISMISSED WITHOUT LEAVE TO AMEND but without prejudice to being brought in state court;
3. Defendants' motion to strike (Doc. No. 15) is DENIED as moot;
4. Plaintiffs have 21 days from the date of electronic service of this order to file a First Amended Complaint ("FAC"), should they choose to do so;
5. Defendants will have 21 days from the date of electronic service of the FAC to answer or otherwise respond to the FAC;
6. If Plaintiffs do not file an amended complaint within 21 days from the date of electronic service of this order, leave to amend will be automatically withdrawn and the case will be closed without further notice to the parties.

///

IT IS SO ORDERED.

Dated: __January 24, 2022__  _____
SENIOR DISTRICT JUDGE