1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   F. Russell Harris, et al.,                          1:21-cv-00882-KJM-EPG

11                          Plaintiffs,                   ORDER

12   v.

13   Henry Miller Reclamation District No. 2131, et
14   al.,

15                          Defendants.

16

17         F. Russell Harris and Harris Farms, LP (collectively Harris) allege Henry Miller

18   Reclamation District No. 2131 (HMRD), San Luis Canal Company (SLCC) and James Nickel,

19   Cannon Michael, David Pruitt, Robert McDonald, Douglas Goodman, David Carlucci, and

20   Michael Palazzo, in both their personal capacities and official capacities as members of the board

21   of directors for SLCC, and John Wiersma, in both his personal capacity and his official capacity

22   as general manager of SLCC, violated Harris's constitutional rights when defendants' denied his

23   application for licenses to build a new water collection and distribution system Harris believed

24   was necessary to sustain his newly planted almond trees.[1]  Two motions are currently before the

_____

[1] Nickel is a member of the board of trustees of HMRD and is the board president of
SLCC.  Michael is a member of the board of trustees of HMRD and is vice president of SLCC.
Pruitt is the member of the board of trustees of HMRD and is secretary, treasurer and member of
the board of directors of SLCC.  McDonald is a member of the board of trustees of HMRD and of
the board of directors of SLCC.  Goodman is a member of the board of trustees of HMRD and of
the board of directors of SLCC.  Carlucci is a member of the board of trustees of HMRD and of

1

court.  Harris seeks to disqualify defendants' counsel from concurrently representing all defendants and defendants move to dismiss Harris's claims or, in the alternative, stay the case, and to strike his request for punitive damages against SLCC and HMRD.  As noted more fully below, the court **denies** Harris's motion to disqualify, **grants in part and denies in part** defendants' motion to dismiss, **denies** defendants' request to abstain, and **denies** defendants' motion to strike Harris's claims for punitive damages against SLCC and **grants** defendants' motion to strike Harris's claims for punitive damages against HMRD.

## I.    FACTUAL ALLEGATIONS

Harris "is internationally known as '[t]he Almond Man.'"  First Am. Compl. ¶ 20.  A lifelong Central Valley farmer, Harris is the owner of the Almond Company and is general manager of Harris Farms, a California limited partnership that owns property in the Central Valley and specializes in almond production.  *Id.* ¶¶ 3–4, 20.  In February 2021, Harris purchased some farmland in Merced County from the Gamboni family.  *Id.* ¶ 21.  The land had previously been used for cotton farming, but Harris was determined to transform the land into an almond farm.  *Id.* ¶ 22.  After "taking control" of the property—on a date unclear from the complaint— Harris began planting almond trees.  *See id.* ¶¶ 22–23.

Almond trees require more water than cotton, and more water than his land "naturally produces," so Harris came up with a proposed plan to better reuse the water on his land through a new collection and distribution network.  *Id.*  He calls this plan "the Project."  *Id.* ¶ 23.  Even though the water is collected on his own land, for the Project to work, Harris needs to build water crossings under drains and canals controlled by HMRD.  *See id.*  His proposal involves four crossings: one under a drain at the intersection of Fairfax Road and Mint Road, one under San Juan Drain #3 east of Fairfax Road, and two under the Temple-Santa Rita Canal.  *See id.*  HMRD has non-exclusive easements over the two drains and owns the canal in fee simple.  *See id.*

---

the board of directors of SLCC.  Palazzo is a member of the board of trustees of HMRD and of the board of directors of SLCC.  Wiersma is an employee of both entities and acts as general manager of both SLCC and HMRD.  *See* First Am. Compl. ¶¶ 7–14, ECF No. 31.

Two entities are ultimately responsible for authorizing licenses for crossings like the ones envisaged by the Project. The first is SLCC, a private mutual water company that owns water rights and is charged with ensuring delivery of water to its shareholders in Merced County and Fresno County. *See id.* ¶ 16. Harris became a shareholder of SLCC in February 2021. *Id.* ¶ 21. The second is HMRD. HMRD is a public water reclamation district, organized under California law in 1999. *See id.* ¶¶ 16–17. HMRD is responsible for the maintenance of the canals and drains of SLCC and it operates drainage facilities. *See id.* ¶ 17. HMRD has "ownership and control of a unique district boundary that include[s] . . . the canals, ditches, and drains owned by the SLCC," but "the ownership of water rights and responsibility to provide water to customers remain[s] with SLCC." *Id.* ¶¶ 17, 18.

From Harris's perspective, HMRD and SLCC are one and the same. They have the same board of directors and general manager. *See id.* ¶¶ 7–14. They operate from the same office, share the same website, and "operate as a single, unified unit, when it benefits them, or as distinct entities to take advantage of the public and private protections respectively afforded to them." *Id.* ¶ 19. The named defendants in this action illustrate the alleged overlap. Wiersma, for example, is the general manager of both SLCC and HMRD. *Id.* ¶ 14. All the other individual defendants—Nickel, Michael, Pruitt, McDonald, Goodman, Carlucci, and Palazzo—serve both as SLCC directors and HMRD trustees. *See id.* ¶¶ 7–13.

Although he did not purchase his land until 2021, apparently Harris first presented the Project to the SLCC board in the summer of 2019, where he received positive feedback. *See id.* ¶ 30. From there, however, Harris alleges he has encountered roadblock after roadblock. In January 2020, Alejandro Paolini, the water conservation specialist for HMRD, raised concerns about the quantity and quality of water that would circulate throughout the Project. *See id.* ¶ 31. Then, under the direction of Wiersma, the HMRD board began changing the requirements for approval of the Project, including requiring water quality tests on what would become Harris's property. *See id.* ¶¶ 32–79. Finally, in October 2020, Wiersma informed Harris he would need to build a reservoir for the Project to be approved. *See id.* ¶ 80. According to Harris, a reservoir

1    would have cost him an additional $20 million. *See id.* ¶ 82. Harris alleges Wiersma knew as

2    much and had included the reservoir requirement to effectively "kill[] the Project." *Id.* ¶ 83.

3        The crux of Harris's complaint is the board members and trustees of SLCC/HMRD denied

4    the Project out of personal animus toward Harris and because Harris lacked insider connections

5    with the board. Harris supports this position by alleging various board members "did not like

6    [Harris]" and that Wiersma actively encouraged engineers not to work with Harris and at one

7    point trespassed on "private property" to investigate Harris's farming practices. *See id.* ¶¶ 53, 60,

8    84. Harris also claims HMRD accepted three other proposals for water crossings that were

9    substantially similar to his own. First, Harris alleges the Bowles Farming Company installed a

10   crossing of a drain—"the Bowles Crossing"—so it could move "irrigation water from Bowes'

11   [sic] adjacent farmland." *See id.* ¶ 25. Second, the Gamboni family installed a steel pipe across

12   San Juan Drain # 3 at Fairfax Road and Island Road—the "IDC Crossing." *See id.* ¶ 26. Third,

13   Nickel Family LLC installed a "water tile system"—the "Nickel System"—that utilizes water

14   crossing systems similar to the ones proposed in the Project. *See id.* ¶ 27.

15       Harris alleges HMRD treated the Project differently than the three approved crossings.

16   For example, HMRD did not require any of these three crossings to first obtain a license or a

17   permit but did require such permitting of the Project even though the Project would have "the

18   same impact—if not less—on HMRD's canals or drains . . . ." *See id.* Harris alleges these

19   approved crossings had easier, if not non-existent, application processes because the applicants

20   had insider connections. *See id.* ¶¶ 25–27. For example, the Bowles Farming Company had

21   insider connections to help it get its crossing approved through Michael Bowles, a trustee of

22   HMRD and vice president of SLCC who also is the President and Chief Executive Officer of

23   Bowles Farming Company. *See id.* ¶ 25. For their crossing, the Gambonis used the services of

24   Irrigation Design & Construction (IDC). *See id.* ¶ 26. Pruitt, a trustee of HMRD and the vice

25   president of HMRD's board and secretary and treasurer of SLCC, is connected to IDC because

26   his son owns the company, and presumably some kind of quid pro quo helped get the IDC

27   Crossing approved. *See id.* Meanwhile the approval of the Nickel System was aided by James

28   Nickel, a trustee of HMRD and board president of SLCC, who owns Nickel Family LLC. *See id.*

¶ 27.  Conversely, Harris had "internal HMRD and SLCC forces" working against him and as a consequence HMRD and SLCC required a more stringent—if not insurmountable—application process for the Project than it did for the Bowles Crossing, the IDC Crossing or the Nickel System.  *See id.* ¶ 36.

## II.    PROCEDURAL BACKGROUND

Harris filed his original complaint in June 2021 against the same defendants.  *See generally* Compl., ECF No. 1.  Harris also made allegations against individual defendants in their official capacities with HMRD.  *See id.* at 1–2.[2]  Harris brought claims alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as state law claims.  *See id.*  on July 23, 2021, defendants filed a motion to dismiss the original complaint.  *See* Mot., ECF No. 15.  The previously assigned district judge granted the motion to dismiss.  *See* Order (January 24, 2022), ECF No. 30.  The court held Harris's Due Process interests were in acquiring the licenses required for the Project to commence, and he had failed to plead a constitutionally protected property interest in the licenses without further allegations that defendants' denial of the licenses was wrongful.  *Id*. at 7.  Further, the court held Harris's "class of one" theory of discrimination under the Equal Protection Clause had relied "solely on conclusory allegations . . . without setting forth factual allegations as to the treatment supposedly received by others."  *Id*. at 8.  The court also found plaintiffs' claims against individual defendants in their official capacities with HMRD were duplicative of their claims against HMRD as an entity and dismissed with prejudice all of Harris's claims against defendants acting in their official capacities with HMRD.  *See id.* at 9–10.

On September 27, 2021, Harris filed a motion to disqualify defendants' counsel, who are lawyers affiliated with Kronick, Moskovitz, Tiedemann & Girard (Kronick) and Lewis Brisbois Bisgaard & Smith (Lewis Brisbois), from representing all of the many defendants concurrently.  *See generally* Pls.' Mot., ECF No. 25.  Harris also filed shareholder derivative claims on behalf of SLCC against its officers and directors in California state court, as well as a second lawsuit in

---

[2] Pages cited here are those applied at the top right by the CM/ECF system.

1  California state court alleging HMRD and its directors violated California public records laws.

2  *See id.* at 6–9.  Kronick and Lewis Brisbois appeared on behalf of the directors and officers in the

3  shareholder derivative case, and they appeared on behalf of the defense in the state court case

4  against HMRD.  *See generally* S'holder Deriv. Answer, ECF No. 26-2; HMRD Action Answer,

5  ECF No. 26-4.  Harris argues the two firms cannot simultaneously defend SLCC against Harris's

6  claims in this case and represent the defendants who are adverse to SLCC in the shareholder

7  derivative action, i.e., its individual officers and directors.  *See* Pls.' Mot. at 13–21.  He argues

8  similarly that Kronick and Lewis Brisbois cannot represent all of the various individual and

9  organizational defendants in this action while concurrently defending HMRD in the second state

10  court action, because HMRD's interests in that case are likely at odds with those of its individual

11  officers and directors.  *See id.*  As a part of this motion, Harris requests the court take judicial

12  notice of the two related state cases.  *See* ECF Nos. 26-1–4.

13       Harris filed the operative amended complaint here on February 14, 2022, alleging six

14  claims: (1) violations of 42 U.S.C. § 1983 Fourteenth Amendment Substantive Due Process by

15  Defendant HMRD and its officials; (2) violations of 42 U.S.C. § 1983 Substantive Due Process

16  by Defendant SLCC and its officials; (3) violations of 42 U.S.C. § 1983 Fourteenth Amendment

17  Procedural Due Process by Defendant HMRD and its officials; (4) violations of 42 U.S.C. § 1983

18  Fourteenth Amendment Procedural Due Process by Defendant SLCC and its officials; (5)

19  violations of 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection by Defendant HMRD

20  and its officials; and (6) violations of 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection

21  by Defendant SLCC and its officials.  *See* First Am. Compl at 23–35.  Harris seeks general,

22  special and punitive damages as well as attorneys' fees.  *See id.* ("Prayer for Relief").  Harris's

23  Equal Protection claims continue to rely on a "class of one" theory, but the operative complaint

24  has added allegations that Harris experienced disparate treatment compared to the three other

25  crossings projects executed by the Bowles, Gamboni and Nickel farms.  *See id.* ¶¶ 25–27.  The

26  operative complaint continues to level allegations against individual defendants in their personal

27  capacities, but the complaint now includes allegations against the individuals in their official

28  capacities with SLCC.  *See id.* at 1–2.

1    In February 2022, defendants moved to dismiss Harris's amended claims arguing Harris

2    does not have a valid life, liberty, or property interest to support his Due Process claims, and also

3    that Harris's claims he was "singled out or that someone else in Harris's position would have

4    been treated differently" are conclusory. *See* Defs.' Mem. at 8–15, 18, ECF No. 32-1. In the

5    alternative, defendants request the court stay Harris's claims against SLCC under *Younger v.*

6    *Harris*, 401 U.S. 37 (1971). *See id.* at 11–12, 15, 18. Defendants also request the court strike

7    Harris's request for punitive damages. *See id.* at 18–19. Harris, in his opposition, asserts he has

8    provided more detailed allegations on how he was treated differently and more detrimentally than

9    others applying for licenses for water crossings from HMRD/SLCC. Pls.' Opp'n at 15, ECF No.

10   33.[3] As to his property interest, Harris asserts he has "set forth facts that Defendants' overzealous

11   and selective regulation of Plaintiffs' use of his Property . . . deprived [him of his] ability to use

12   the Property as an almond farm." *Id.* at 7.

13    On September 9, 2022, the court ordered a stay of all proceedings until November 28,

14   2022, while the parties engaged in settlement negotiations. *See* Order, ECF No. 37. The stay was

15   first extended to April 10, 2023, *see* Order (Nov. 28, 2022), ECF No. 40, then to October 19,

16   2023, *see* Order (Mar. 30, 2023), ECF No. 42, and eventually to November 30, 2023, *see* Min.

17   Order (Oct. 6, 2023), ECF No. 45. In its March 30, 2023, order, the court administratively denied

18   Harris's motion to disqualify counsel and defendants' motion to dismiss Harris's first amended

19   complaint. *See* Order at 2. On April 11, 2023, the case was reassigned to a new district judge

20   upon the retirement of the original presiding judge. *See* Order, ECF No. 43. In December 2023,

21   both Harris and defendants filed status reports stating they were unable to reach a settlement. *See*

22   Pls.' Status Rep. (Dec. 8, 2023), ECF No. 47; Defs.' Status Rep., ECF No. 48. The assigned

---

[3] Harris attaches four exhibits to his opposition. ECF Nos. 33-1–4. The court does not consider these exhibits as they are outside the pleadings and plaintiffs have not requested the court take judicial notice of the attached documents, nor is it clear from the face of the documents the court could take notice sua sponte. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Further, the court declines to convert this motion into one for summary judgment as the parties have not submitted statements of facts and have not pled the proper legal standard for a motion for summary judgment. *See Alvarez Acuna v. Fireside Thrift Co., Inc.*, No. 05-3876, 2006 WL 1312528, at *9 (D. Ariz. May 11, 2006).

1   magistrate judge lifted the stay.  *See* Min. Order (Dec. 18, 2023), ECF No. 49.[4]  On February 20,

2   2024, the parties filed a joint status report and requested the court reinstate and resolve

3   defendants' motion to dismiss Harris's first amended complaint.  *See* ECF No. 53.  The assigned

4   magistrate judge reinstated defendants' motion to dismiss on February 20, 2024.  *See* Min. Order,

5   ECF No. 54.  This action was reassigned to the undersigned on October 11, 2024.  *See* ECF No.

6   59.  On October 15, 2024, the assigned magistrate judge reinstated Harris's motion to disqualify

7   defendants' counsel.  *See* ECF No. 60.

8        Both motions are fully briefed.  *See generally* Pls.' Mot; Defs.' Opp'n, ECF No. 27; Pls.'

9   Reply, ECF No. 28; Defs.' Mem.; Pls.' Opp'n; Defs.' Reply, ECF No. 34.  The court takes the

10  matter under submission without holding a hearing.  *See* E.D. Cal. L.R. 230(g).

11  **III.    HARRIS'S MOTION TO DISQUALIFY**

12       Harris seeks to disqualify Kronick and Lewis Brisbois from representing "all defendants

13  in the litigation currently pending before the court," Pls.' Mot. at 9, arguing there are actual

14  conflicts of interest between SLCC and HMRD and the directors and trustees of both entities,

15  named as defendants.  Harris also requests the court take judicial notice of four documents:

16       • The summons and complaint filed in California Superior Court in Merced County

17            on June 2, 2021 in *Harris Farms LP v. SLCC et al.*, No. 21-1886.  ECF No. 26-1

18            (Rel. Compl. # 1).

19       • The answer filed in California Superior Court in Merced County on August 13,

20            2021 in *Harris Farms LP v. SLCC et al.*, No. 21-1886.  ECF No. 26-2 (Rel.

21            Answer # 1).

22       • The complaint filed in California Superior Court in Merced County on June 17,

23            2021 in *Harris v. HMRD et al.*, No. 21-2016.  ECF No. 26-3 (Rel. Compl. # 2).

24  /////

25  /////

26  /////

_____

[4] In this District's Fresno division, the magistrate judge presides over all pretrial
scheduling conferences and the final pretrial conference.  *See* E.D. Cal. L.R. 302(c)(13).

1    • The answer filed in California Superior Court in Merced County on July 28, 2021

2        in *Harris v. HMRD et al.*, No. 21-2016.  ECF No. 26-4 (Rel. Answer # 4).

3    *See generally* Pls.' Req Jud. Notice.  The court takes judicial notice of the existence of these

4    documents and, on its own motion, takes notice of the dockets in both state cases, *Harris Farms*

5    *LP*, No. 21-1886, and *Harris*, No. 21-2016.  *See United States ex rel. Robinson Rancheria*

6    *Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts may "take notice of

7    proceedings in other courts, both within and without the federal judicial system, if those

8    proceedings have a direct relation to  matters at issue").  In *Harris Farms LP*, the state court has

9    recently dismissed Harris's second amended complaint.  *See* Order (Mar. 12, 2025) at 2, *Harris*

10   *Farms LP*, No. 21-1886.  Harris filed a third amended complaint on April 14, 2025.  *See* Third

11   Am. Compl., *Harris Farms LP*, No. 21-1886*.*  In *Harris*, the parties held a bench trial in February

12   2025 and the parties submitted closing arguments on April 28, 2025.  *See* Closing Arguments,

13   *Harris*, No. 21-2016.  Further, new counsel represents HMRD in *Harris*.  *See id.*  In both cases,

14   Harris filed an almost identical motion to the motion here to disqualify defendants' attorneys.  *See*

15   Pls.' Motion to Disqualify (Sept. 29, 2021), *Harris Farms LP*, No. 21-1886; Pls.' Motion to

16   Disqualify (Sept. 29, 2021), *Harris*, No. 21-2016.  In both cases the state court denied the request,

17   finding Harris "has not established the existence of an unwaivable conflict between specific

18   clients that outweigh such clients' rights to counsel of their choice or makes such clients' desire

19   to present a united front to [Harris] untenable."  Order (Nov. 1, 2021), *Harris Farms LP*, No. 21-

20   1886; Order (Dec. 6, 2021), *Harris*, No. 21-2016 (quotation in both orders).

21       **A.    Disqualification**

22       Harris's motion to disqualify calls for the application of California law.  This District has

23   adopted the Rules and Professional Conduct of the State Bar of California and any applicable

24   state court decisions as its own standards of professional conduct.  E.D. Cal. L.R. 180(e).  If an

25   attorney or firm takes on a representation in violation of these rules, a district court has authority

26   to impose sanctions, including disqualification.  *See* E.D. Cal. L.R. 110; *CALAMCO v. J.R.*

27   *Simplot Co.*, No. 21-1201, 2022 WL 7443383, at *6 (E.D. Cal. Oct. 13, 2022).  In resolving

28   motions to disqualify, courts may resolve factual disputes and make findings based on evidence.

9

1    *See CALAMCO*, 2022 WL 7443383, at \*6 (citing *Visa U.S.A. Inc. v. First Data Corp.*, 241 F.

2    Supp. 2d 1100, 1104 (N.D. Cal. 2003))..

3        Courts applying California law examine motions to disqualify like Harris's with

4    skepticism.  While the "adversary system requires vigorous representation of parties by

5    independent counsel unencumbered by conflicts of interest" and this advocacy is a "fundamental

6    principle," *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1108 (E.D. Cal.

7    2015 (quoting *In Re Lee G*, 1 Cal. App. 4th 17, 26 (1991)), courts are wary of motions to

8    disqualify because they often are "tactically motivated," *Greenfield MHP Assocs., LP v. Ametek,*

9    *Inc.*, No. 15-1525, 2018 WL 538961, at \*2 (S.D. Cal. Jan. 24, 2018) (quoting *Crenshaw v. Mony*

10   *Life Ins. Co.*, 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004)).  Disqualifying counsel could deprive

11   a litigant of the "significant right" of being represented by an attorney of his or her choosing.  *See*

12   *Cornish v. Sup. Ct.*, 209 Cal. App. 3d 467, 478 (1989) (quoting *Lyle v. Sup. Ct.*, 122 Cal. App. 3d

13   470, 481 (1981)).  Thus, motions to disqualify under California law, "should be subjected to

14   particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d

15   1045, 1050 (9th Cir. 1985) (internal marks and citations omitted).  To protect the right of litigants

16   to have the attorney of their choosing, a court may refuse to disqualify an attorney even after

17   finding the attorney violated one of California's Rules of Professional Conduct.  *See Gregori v.*

18   *Bank of Am.*, 207 Cal. App. 3d 291, 303 (1989).

19       Harris argues defendants' counsel violated California Rules of Professional Conduct 1.7,

20   which bars counsel from representing a client—absent informed consent— "if the representation

21   is directly adverse to another client in the same or a separate matter."  Cal. R. Prof. Conduct

22   1.7(a).  Counsel also violate Rule 1.7, if, absent informed consent from all affected parties, they

23   represent a client when "there is a significant risk the lawyer's representation of the client will be

24   materially limited by the lawyer's responsibilities to or relationships with another client, a former

25   client or a third person, or by the lawyer's own interests."  Cal. R. Prof. Conduct 1.7(b).  Even

26   with informed consent, counsel cannot represent clients when "their representation . . . involve[s]

27   the assertion of a claim by one client against another client represented by the lawyer in the same

28   litigation or other proceeding before a tribunal."  Cal. R. Prof. Conduct 1.7(d)(3).

1    Harris's primary argument focuses on the defense representation in the shareholder

2    derivative lawsuit he filed against SLCC's directors. *See generally Harris Farms LP*, No. 21-

3    1886. In short, he contends Rule 1.7 prevents counsel from simultaneously representing SLCC in

4    this action and the parties opposing SLCC in the shareholder derivative action, i.e., the individual

5    officers and directors. *See* Pls.' Mot. at 13–21. Harris makes a variety of other arguments for

6    disqualification as well, including that allowing counsel to defend both HMRD and SLCC only

7    further entangles the organizations, that the individual defendants affiliated with HMRD used

8    public funds to carry out personal vendettas, that individual defendants' caused pecuniary injury

9    to SLCC and HMRD, they had received grants from SLCC in 2013, and that the individual

10   defendants' use of a qualified immunity defense creates a conflict of interest with SLCC and

11   HMRD. *See* Pls.' Mot. at 19; Pls.' Reply at 6–13; Keys Decl., Ex. 1, ECF No. 28-1.

12   In cases involving simultaneous representations, "[t]he primary value at stake . . . is the

13   attorney's duty—and the client's legitimate expectation—of loyalty . . . ." *Forrest v. Baeza*, 58

14   Cal. App. 4th 65, 74 (1997) (quoting *Flatt v. Sup. Ct.*, 9 Cal. 4th 275, 283 (1994)). "In all but a

15   few instances, the rule of disqualification in simultaneous representation cases is a per se or

16   automatic one." *Id.* (internal marks omitted). In shareholder derivative actions, an attorney

17   cannot represent both the corporation and the members of its board because "the corporation,

18   while nominally a defendant, is actually a plaintiff." *Id.* Because of this conflict, at least

19   "where . . . directors are alleged to have committed fraud," California courts forbid the "dual

20   representation of a corporation and directors in a shareholder derivative suit." *Id.*

21   At the same time, California courts have imposed strict "standing" requirements on parties

22   seeking to disqualify the opposing parties' attorney. "[I]t must first be established that the party

23   seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving

24   rise to an attorney-client relationship." *Cornish.*, 209 Cal. App. 3d at 478. At the very least, a

25   party seeking to bring such a motion must show "some sort of confidential or fiduciary

26   relationship . . . existed before a party is entitled to prevail . . . ." *Jarvis v. Jarvis*, 33 Cal. App.

27   5th 113, 132 (2019) (quoting *Dino v. Pelayo*, 145 Cal. App. 347, 353 (2006)).

Harris does not satisfy this requirement of "standing" because he does not allege he was or is represented by Kronick or Lewis Brisbois or that he will suffer any injury from defendants' choice of representation. *See Moreci v. Scaffold Solutions, Inc.*, 70 Cal. App. 5th 425, 444 (2021) ("[L]ack of standing alone is sufficient for the trial court to deny [a motion to disqualify]."). Further, Harris does not allege fraud in the shareholder derivative action, and thus the court need not apply the per se disqualification rule. *See Forrest*, Cal. App. 4th at 74; Defs.' Opp'n at 4. Finally, rather than demonstrating a conflict of interest between SLCC and its directors, Harris's two other lawsuits against SLCC and HMRD actually reveal the multiple fronts of his litigation against these defendants. Viewing the litigation landscape as a whole, this motion is just one battle in a broader war. If Harris succeeded in depriving defendants of the attorneys of their choosing—a "significant right" under California law, *see Cornish*, 209 Cal. App. at 478— disqualification would be a tactical victory rather than a remedy for an actual injury. The court declines to disqualify Kronick and Lewis Brisbois. *See Greenfield MHP Assocs., LP*, 2018 WL 538961, at *2.

Harris argues he has "vicarious standing" to bring a motion for disqualification. *See* Pls.' Mot. at 13–14. He relies on *Blue Water Sunset, LLC v. Markowitz*, in which the California court of appeal "announced a limited exception" to California's standing requirements for litigants bringing motions to disqualify the counsel of their opponents. 192 Cal. App. 4th 477, 481 (2011). That exception, however, only allows one member of a two-member LLC in a derivative action against the other member to bring a motion to disqualify counsel if an attorney is attempting to represent both the LLC and the other member. *See id.* Here, SLCC has more than two members or shareholders. *See* First Am. Compl. at 1–2 (listing more than two individual defendants who were directors of SLCC). The *Blue Water* exception to California standing requirements for bringing a motion to disqualify opposing counsel does not apply to this case.

Harris points to federal district court decisions rejecting the need to find standing for a movant to bring a motion to disqualify an opposing counsel because a court can disqualify an attorney based on its inherent power. *See Ballew v. City of Pasadena*, No. 18-0712, 2020 WL 4919384, *4 (C.D. Cal. Apr. 13, 2020); Greenfield *MHP Assocs., LP*, 2018 WL 538961, at *3–4

1  (citing *Crenshaw*, 318 F. Supp. 2d at 1020).  But the court in *Greenfield*, incorrectly in this

2  court's view, was discussing Article III standing requirements as though they were the same as

3  California standing requirements for succeeding on a motion to disqualify an attorney.  *See id.*

4  The court in *Greenfield* also noted Ninth Circuit dicta suggests federal courts are required to

5  follow California standing requirements.  *See id.* at *4 (citing *Kasza v. Browner*, 133 F.3d 1159,

6  1171 (9th Cir. 1998) (noting "as a general rule, courts do not disqualify an attorney on the ground

7  of conflict of interest unless the former client moves for disqualification")).  While the word

8  "standing" is confusing semantically, ultimately the requirement asks whether litigants "were

9  entitled to prevail on a motion seeking [an attorney's] disqualification."  *Dino,* 145 Cal. App. 4th

10  at 353 n.2; *see also Jarvis*, 33 Cal. App. 5th at 132 (applying the *Dino* framework).  Importantly,

11  the standing requirement also protects litigants' rights to the counsel of their choosing.  *See Lyle*,

12  122 Cal. App. 3d at 481 ("The right of a party to be represented in litigation by the attorney of his

13  or her choice is a significant right and ought not to be abrogated in the absence of some indication

14  . . . the adverse party will otherwise be unfairly disadvantaged by the use of confidential

15  information obtained as a result of the earlier representation."); *see also Cornish*, 209 Cal. App. at

16  478 (articulating a similar holding).  Here, Harris is not entitled to prevail because he has not

17  shown a conflict of interest that detrimentally affects his rights as a litigant and granting the

18  motion would unfairly disadvantage defendants by not allowing them to be represented by the

19  counsel of their choosing.

20        The court denies Harris's motion to disqualify Kronick and Lewis Brisbois from

21  representing all defendants.

22  **IV.  DEFENDANTS' MOTION TO DISMISS**

23        Defendants move to dismiss all six of Harris's claims, arguing Harris fails "to state a

24  claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see generally* Defs.' Mem.

25  The court begins by assuming Harris's allegations are true, without accepting his legal

26  conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*,

27  550 U.S. 544, 555 (2007)).  The court then determines whether Harris's factual allegations

28  "plausibly give rise to an entitlement to relief" under Rule 8.  *Id.* at 679.  This evaluation of

1    plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.*

2    Harris's complaint need contain only a "short and plain statement of the claim showing that the

3    pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Twombly*,

4    550 U.S. at 555. The court construes all factual allegations "in the light most favorable" to

5    Harris. *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting

6    *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).

7           **A.    Individual Defendants Acting in their Official Capacities**

8           The court in its previous order noted other district courts "routinely dismiss [an] official

9    capacity claim as duplicative or redundant" of a claim against a public entity. Order (Jan. 24,

10   2022) at 9 (quoting *Rose v. County of Sacramento*, 163 F. Supp. 3d 787, 793 n.1 (E.D. Cal.

11   2016)). Thus, "[c]onsistent with common practice," the court dismissed with prejudice Harris's

12   substantive due process, procedural due process and equal protection claims against defendants

13   acting in their official capacities on behalf of HMRD. *See id.* at 10, 13. In the operative

14   complaint, Harris now brings claims against all individuals acting in their official capacities on

15   behalf of SLCC. *See* First Am. Compl. at 1–2. The court, for the same reasons as in its previous

16   order dismissing Harris's first complaint, dismisses all claims against individual defendants

17   acting in their official capacities for SLCC.

18          **B.    Due Process Claims (Claims 1, 2, 3, 4)**

19          Defendants argue Harris has not been deprived of any constitutionally protected life,

20   liberty, or property interests. *See* Defs.' Mem. at 10–15. "A threshold requirement to a

21   substantive or procedural due process claim is the plaintiff's showing of a [life,] liberty[,] or

22   property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix,

23   Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). Harris does not allege a deprivation of life or liberty.

24   Therefore, for Harris's first four claims, the court must analyze whether Harris has alleged a

25   constitutionally protected property interest.

26          "[P]roperty interests that due process protects extend beyond tangible property and

27   include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Nozzi v. Hous.

28   Author. of L.A.*, 806 F.3d 1178, 1191) (9th Cir. 2015) (quoting *Board of Regents of State Colls. v.*

1   *Roth*, 408 U.S. 564, 569 (1972)).  These entitlements are "'created and . . . defined by existing

2   rules or understandings' that 'secure certain benefits,' 'support claims of entitlement to those

3   benefits and stem from an independent source such as state law.'"  *Briseno v. Bonta*, 621 F. Supp.

4   3d 1065, 1072 (C.D. Cal. 2022) (quoting *Roth*, 408 U.S. at 577)).  But in order for a benefit like a

5   license to be construed as a constitutionally protected property interest, Harris must show he has

6   "more than a unilateral expectation of it," *Roth*, 408 U.S.at 564, and that SLCC and HMRD

7   officials may not "grant or deny it in their discretion," *Town of Castle Rock v. Gonzales*, 545 U.S.

8   748, 756 (2005).

9            Harris's allegations do not permit the court to infer he has been deprived of a

10  constitutionally protected property interest.  His allegations focus on defendants' rigorous

11  requirements for a license to build four crossings through HMRD property.  *See* First Am. Compl.

12  ¶¶ 28–85.  But Harris makes no allegations that could show he had a constitutionally protected

13  entitlement to those licenses.  He does not allege a statute or regulation gives him "more than a

14  unilateral expectation" in the licenses, *Roth*, 408 U.S.at 564, nor that HMRD and SLCC may not

15  "grant or deny [the license application] in their discretion," *Town of Castle Rock*, 545 U.S. at 756;

16  *see also Gerhart v. Lake County, Mt.*, 637 F.3d 1013, 1020–21 (9th Cir. 2011) (holding there is

17  no entitlement to an approach permit); *Cassidy v. Hawaii*, 915 F.2d 528, 531 (9th Cir. 1990)

18  (rejecting a claim to an entitlement to permit renewal as plaintiff had only a unilateral expectation

19  of renewal).  Without a constitutionally protected property interest, Harris cannot sustain either a

20  procedural or a substantive due process claim.

21           Harris argues his property interest lies in the freedom from unlawful interference with his

22  ability to use his land for almond farming.  *See* Pls.' Opp'n at 10–11.  He cites to *Harris v.*

23  *County of Riverside* in support of this proposition.[5]  904 F.2d 497, 499–504 (1990).  The Ninth

24  Circuit in *County of Riverside* recognized a constitutionally protected interest in a property

25  owner's right to obtain notice and a hearing before the owner's property was rezoned for

26  commercial use.  *See id.* at 504.  Since *County of Riverside* was decided, the Ninth Circuit has not

---

[5] There appears to be no relationship between Harris the plaintiff in this case and the plaintiff in *Harris v. Riverside*, 904 F.2d at 497.

1    extended its holding beyond zoning and regulatory schemes. *See, e.g., Squaw Valley Dev. Co. v.*

2    *Goldberg*, 375 F.3d 936, 949 (9th Cir. 2004) (rejecting an "unlawful interference with property"

3    theory as a valid substantive due process claim but recognizing "overzealous and selective

4    regulation" could interfere with a valid property interest under *County of Riverside*).  District

5    courts in the Circuit have explicitly declined to extend *County of Riverside* to permitting denials,

6    such as defendants' alleged actions here, as they have found the interest at stake is in the license

7    and not the ability to use one's land for a legitimate commercial purpose. *See, e.g., Acad. of Our*

8    *Lady of Peace v. City of San Diego*, No. 09CV962-CAB, 2012 WL 13175857, at *6 (S.D. Cal.

9    2012).  As importantly, Harris has not alleged he had any property interest whatsoever from 2019

10   to 2020 when defendants allegedly injured him.  He did not buy the land from the Gambonis until

11   2021.  *See* First Am. Compl. ¶ 21.  In no case has the Ninth Circuit held someone has a

12   constitutionally protected right to not have someone else's land interfered with that they might

13   one day buy.  Harris cannot claim a right to "devote [his] land to any legitimate use," *see* Pls.'

14   Opp'n at 10 (quoting *Riverside*, 904 F.2d at 503), because he did not possess the land when the

15   purported injury took place, s*ee* First. Am. Compl. ¶ 21.

16        Because Harris has not alleged a colorable property interest, the court grants defendants'

17   motion to dismiss claims 1, 2, 3, and 4 for all defendants.

18        **C.    Equal Protection Claims (Claims 5 and 6)**

19        The Equal Protection Clause of the Fourteenth Amendment provides "all persons similarly

20   situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432,

21   439 (1985).  Harris argues he was treated differently and more detrimentally than other similarly

22   situated farmers due to the animus of the HMRD board and his lack of insider connections. *See*

23   First Am. Compl. ¶¶ 25–27, 53, 60, 84; Pls.' Opp'n at 15–16.  Thus, Harris argues his Fourteenth

24   Amendment rights were violated based on the "class of one" doctrine. *Village of Willowbrook v.*

25   *Olech*, 528 U.S. 562, 564 (2000).

26        To prevail under the "Class of One" doctrine, Harris ultimately must demonstrate that:

27   (1) he was treated differently than other similarly situated persons; (2) the different treatment was

28   intentional; and (3) there was no rational basis for the difference in treatment. *SmileDirectClub,*

1    *LLC v. Tippins*, 31 F.4th 1110, 1122–23 (9th Cir. 2022) (quoting *Village of Willowbrook*, 528

2    U.S. at 564).  For differential treatment, Harris must show he was "similarly situated to the

3    proposed comparator in all material respects."  *Id.* at 1123.  Such an inquiry is almost always

4    "fact-specific."  *See Olson v. California¸* 104 F.4th 66, 77 (9th Cir. 2024).  The rational basis

5    standard is not a high bar.  Unless Harris ultimately can negate "every conceivable basis" for

6    defendants' differential treatment of the Project, defendants' "distinctions may be upheld." *Id.* at

7    71–72 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  If Harris can show

8    HMRD and SLCC exhibited a "pattern of generally exercising the discretion in a particular

9    manner while treating one individual differently and detrimentally," his class of one claim can

10    survive a motion to dismiss.  *Contasti v. City of Solana Beach*, 644 F. App'x 743, 744 (9th Cir.

11    2016) (unpublished) (quoting *Towery v. Brewer*, 672 F.3d 650, 660-61 (9th Cir. 2012)).

12          At this stage of the litigation, Harris has adequately pled he is similarly situated to his

13    comparators in all material respects and that HMRD/SLCC and the individual defendants acting

14    in their personal capacities intentionally treated him differently from the comparators.

15    Numerically, Harris has specifically identified three comparators and that is sufficient.  *See*

16    *Hardesty v. Sacramento Met. Air Quality Mgmt. Dist.*, 935 F. Supp. 2d 968, 984 (E.D. Cal. 2013)

17    (finding two substantially similar comparators to be sufficient).  In this group, Harris alleges he is

18    the only one who was required to actually obtain a license, and he was the only one required to

19    build a reservoir.  *See* First Am. Compl. ¶¶ 25–27, 80.  The three comparator crossings involve

20    farmers seeking to connect water systems between their lands by crossing over or under HMRD

21    drains or canals.  *See id.* ¶¶ 25–27.  The types and numbers of crossings differed between Harris's

22    proposed Project and those of his chosen comparators.  Based on the pleadings, it is not clear

23    those differences are material as they do not shed light as to why the application process and

24    requirements for Harris's Project were so different from the application process and requirements

25    for his comparators.  *See SmileDirectClub*, at 1122–23.  The material similarities between the

26    four projects are the process and requirements for applying for the license, that the license was for

27    a water crossing over HMRD drains and canals, and that applicants for the crossing were nearby

28    /////

farmers who owned land on either side of HMRD drains or canals.  *See* First Am. Compl. ¶¶ 25–27.

Defendants argue the allegations regarding the comparators are conclusory, *see* Defs.' Mem. at 17, but Harris has alleged sufficient detail regarding his three comparators, including the construction details to satisfy plausibility.  *See* First Am. Compl. ¶¶ 25–27.  He also has identified a common theme: he was treated differently because he lacked insider connections.  *See* id. ¶ 36. On this record, it is plausible he was treated differently and detrimentally compared to the other applicants.  *See Contasti*, 644 Fed. App'x at 745 (noting arbitrary rationale for rejecting an application "support an inference that the defendant treated the plaintiffs differently and detrimentally when compared with other permit applications.").

For similar reasons, Harris has adequately pled there is no rational basis for his differential and detrimental treatment.  While the standard for providing a rational basis is not high, *see Olson*, at 104 F.4th at 77, at this stage of the litigation, defendants have not provided a rational basis for why the requirements imposed on Harris for obtaining licenses for the Project were so much more onerous than the requirements for his comparators.  *See* First Am. Compl. ¶¶ 25–27. Taking all of Harris's allegations as true, as the court must do at this stage, the only reason the court can find for Harris's differential and detrimental treatment is that he either lacked the requisite insider connections with the HMRD or that members of the Board of SLCC and HMRD had animus towards Harris.  *See id*. ¶¶ 25–27, 53, 60, 84.  Further, Harris has sufficiently pled a pattern and practice of HMRD's exercising its discretion by providing lenient if non-existent application procedures for applicants with insider connections while treating Harris's application for licenses differently and detrimentally.  *See Contasti* 644 Fed. App'x at 745.

The court denies defendants' motion to dismiss Harris's equal protection claims against SLCC, HMRD, and individual defendants acting in their personal capacities.

**D.    Futility**

"[A] district court should grant leave to amend . . .  unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal marks and citations omitted).  The court, for the same reasons as in its

1   previous order dismissing Harris's first complaint, dismisses with prejudice all claims against

2   individual defendants acting in their official capacities for SLCC.  *See* Order (Jan. 24, 2022) at 9.

3   The court cannot conclude, however, that amendment otherwise would be an exercise in futility

4   with respect to Harris's substantive and procedural due process claims against SLCC, HMRD or

5   against the individual defendants acting in their personal capacities.  The motion to dismiss is

6   therefore granted with leave to amend these claims against these defendants, if possible, within

7   the confines of Rule 11.

8        **E.   Abstention**

9        Defendants in the alternative request the court abstain from hearing claims against SLCC

10   (claims 2, 4, and 6, relying on *Younger*, 401 U.S. at 37.  Defs.' Mem. at 11–12, 15, 18.

11   "Abstention from the exercise of federal jurisdiction is the exception, not the rule."  *Colorado*

12   *River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  Absent some

13   extraordinary or exceptional circumstance, federal courts have a "virtually unflagging obligation"

14   to adjudicate the cases before them.  *See Deakins v. Monaghan*, 484 U.S. 193, 203 (1988)

15   (quoting *Colorado River*, 424 U.S. at 817).  "*Younger* abstention is appropriate only when the

16   state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's

17   interest in enforcing the orders and judgments of its courts, (3) implicate an important state

18   interest, and (4) allow litigants to raise federal challenges."  *Roshan v. McCauley*, 130 F.4th 780,

19   782 (9th Cir. 2025) (quoting *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 63–64 (9th Cir. 2024)).

20        Here, the related state cases are not criminal or quasi-criminal.  *See generally* Rel. Compl.

21   # 1; Rel. Compl. # 2.  Nor will the court be interfering with the orders and judgments of

22   California courts as Harris is not requesting an injunction or declaratory relief from this court that

23   might impose such a burden.  *See* Prayer for Relief.  The court finds no basis for *Younger*

24   abstention.  *See Roshan*, 130 F.4th at 782.  The court, further, declines to abstain from hearing

25   claims against SLCC under any other abstention doctrine as there are no discernable exceptional

26   circumstances that would justify an abstention.  *See Colorado River*, 424 U.S. at 813.

27   Defendants' request that the court abstain from hearing all of Harris's claims against SLCC is

28   denied.

1    **F.    Punitive Damages**

2        Defendants move to strike Harris's punitive damages claims against HMRD and SLCC,

3    arguing that California Government Code section 818 bars plaintiffs from recovering punitive

4    damages against public entities.  Defs.' Mem. at 19 (citing Cal. Gov't Code § 818).  Defendants

5    do not contest Harris's ability to seek punitive damages against individual defendants acting in

6    their personal capacities.  *See id.*

7        There is a presumption applicable to § 1983 claims against granting punitive damages

8    against public entities, given that punitive damages are meant to punish the tortfeasor but in the

9    case of governmental wrongdoing the punishment will inevitably fall upon the "blameless or

10   unknown taxpayers" instead.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981).

11   Plaintiffs would need at the very least to point to a state statute authorizing exemplary damages to

12   overcome the presumption.  *See id.* at 271 (noting "absent a compelling reason" courts do not

13   grant punitive damages awards for § 1983 claims against public entities).  However, private

14   entities acting under the color of state law can be subjected to § 1983 liability including punitive

15   damages.  *See Tsao v. Desert Palace*, 698 F. 3d 1128, 1139–1141 (9th Cir. 2012).

16       Based on the complaint, SLCC is a "private mutual water company" and thus could be

17   liable–if acting under the color of state law—for punitive damages under § 1983.  *See* First Am.

18   Compl. at 3.  HMRD, however, is a "public agency responsible for operating and maintaining the

19   drainage and canal system for the SLCC shareholders."  *Id.*  Harris argues the two entities are one

20   and the same—in other words, that they are "entwined," *see Brentwood Acad. v. Tenn. Sec. Sch.*

21   *Athletic Assoc.*, 531 U.S. 288 (2001) (private entities can be state actors for purposes of § 1983 if

22   a public entity is "pervasively entangled" with the private one).  *See id.*  But private entities acting

23   under the color of state law can be subjected to punitive damages.  *See Estate of Hill v. Naphcare,*

24   *Inc.*, No. 23-2741, 2025 WL 1098549, at *4 (9th Cir. Apr. 14, 2025).  As California bars punitive

25   damages awards against public entities like HMRD, *see* Cal. Gov't Code § 818, Harris cannot

26   overcome the presumption against imposing punitive damages upon public entities as established

27   by *City of Newport*, *see* 453 U.S. at 247.  The court grants defendants' motion to strike Harris's

1  punitive damages claims against HMRD but denies defendants' motion to strike Harris's punitive

2  damages claims against SLCC.

3  **V.    CONCLUSION**

4      For the reasons above, the court:

5      - **Denies** Harris's motion to disqualify.

6      - **Grants** defendants' motion to dismiss **with prejudice** all claims against

7        individual defendants acting in their official capacities on behalf of SLCC.

8      - **Grants** defendants' motion to dismiss **without prejudice** Harris's substantive and

9        procedural due process claims against HMRD, SLCC and individual defendants

10       acting in their personal capacities. (Claims 1–4).  Harris has **twenty-one (21)** days

11       to file an amended complaint curing these claims if possible.

12     - **Denies** defendants' motion to dismiss Harris's Equal Protection claims against

13       HMRD and SLCC and against individual defendants acting in their personal

14       capacities (Claims 5–6).

15     - **Denies** defendants' request to abstain from hearing the case.

16     - **Grants** defendants' motion to strike Harris's request for punitive damages against

17       HMRD but **denies** defendants' motion to strike Harris's request for punitive

18       against SLCC.

19     - A status conference is **set** for June 26, 2025, at 2:30 p.m. The status conference

20       will proceed by video conferencing through the Zoom application.  The courtroom

21       deputy will provide counsel with the hearing access information no less than 24

22       hours before the hearing.  The parties shall meet and confer and file a joint status

23       report with the proposed Rule 16 schedule for the case moving forward no later

24       than **fourteen (14) days** before the status conference.

25     This order resolves ECF Nos. 25, 32.

26     IT IS SO ORDERED.

27  DATED:  May 29, 2025.

SENIOR UNITED STATES DISTRICT JUDGE

21